IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GREGORY McGUIRE,                                Civ. No. 04-6181-HO

                Plaintiff,           ORDER

      v.

TARGET CORPORATION,

                          Defendant.

    The first amended complaint (FAC) alleges state law claims for failure to reinstate or reemploy injured worker and retaliation against a worker seeking workers' compensation benefits, and state and federal claims for disability discrimination in employment and retaliation.  Defendant has filed a motion for summary judgment.

    Plaintiff lost any right to reinstatement or reemployment by participating in a vocational assistance program.  On this record, plaintiff is not disabled as a matter of law within the meaning of applicable state and federal laws.  Plaintiff has not

produced sufficient evidence of discriminatory intent to survive summary judgment on his retaliation claims. Defendant's motion for summary judgment is therefore granted.

## Undisputed Facts

Except where noted, the following facts are undisputed for the purpose of resolving defendant's motion.

Defendant hired plaintiff into a maintenance position on February 23, 2000. Plaintiff filed a workers' compensation claim for a job-related back injury suffered on June 1, 2000. Plaintiff fully recovered. Plaintiff filed a second workers' compensation claim for a job-related back injury suffered in October 2001. Defendant provided light duty work for a period of time.

In early 2002, defendant assigned plaintiff to the position of "Flow Team Lead." This position involves lifting up to 50 pounds, and "team lifting" of weights exceeding 50 pounds. Oliver Decl., ex. 13. In February or March 2002, defendant assigned Linda Liebenstein to the position of Store Team Lead (STL).

Plaintiff suffered a mild strain at work on June 12, 2002. A workers' compensation carrier denied plaintiff's claim related to this injury. On July 12, 2002, plaintiff injured his lower back while pulling a pallet jack. Plaintiff filed a workers' compensation claim and obtained medical treatment for this

injury. Dr. Nelson imposed work restrictions of light work, 20 pounds maximum lifting and no repetitive bending. Defendant placed plaintiff on modified duty in the Flow Team Lead position. After working on modified duty for several months, plaintiff transferred to a Guest Services Team Lead (GSTL) position. Plaintiff commenced work in the GSTL position on March 16, 2003.

Dr. Nelson evaluated plaintiff again on April 7, 2003 and concluded that plaintiff was medically stationary and unable to return to heavy lifting for at least six months. Def's Ex. 8. Dr. Nelson prepared a "workability report" including a 20-pound lifting restriction, push-pull restrictions, and body movement restrictions. Def's ex. 9. Dr. Nelson prepared a work release dated May 12, 2003, releasing plaintiff for light work with a 20-pound lifting restriction and no repetitive bending. Def's ex. 13. Defendant placed plaintiff on a leave of absence commencing April 15, 2003. The physical demands of the Flow Team Lead position are not within prescribed medical restrictions for plaintiff.

Plaintiff accepted an offer of vocational assistance and participated in a vocational rehabilitation program.

During 2003 and 2004, plaintiff spoke with defendant's Regional Director of Human Resources, Tony Costanzo, regarding the possibility of returning to work. From April 2003 until February 2004, plaintiff spoke monthly with Anne Alegria of Human

3 - ORDER

Resources.  Costanzo and Alegria asked whether plaintiff had obtained a new medical release.  Plaintiff replied that he had not.

Plaintiff resigned his employment with defendant in April of 2004.  Plaintiff contends that he resigned involuntarily in order to recover 401(K) funds after his workers' compensation benefits expired.

Plaintiff went on week-long hunting trips in August of 2003 and 2004.  He made money selling wooden bears and benches that he made, and cars that he reconditioned.  Plaintiff builds the bears and benches using a band saw, sander, chop saw, router, nail gun, staple gun, screw guns and squares.  Plaintiff held a number of short term jobs during 2004.  Plaintiff currently works as a customer service representative at a call center.  Plaintiff has not provided defendant with an updated medical release.

## Discussion

Summary judgment is appropriate if there are no disputed material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

I. Second Claim - Or. Rev. Stat. §§ 659A.043,[1] 659A.046[2]

---

[1] A worker who has sustained a compensable injury shall be reinstated . . . upon demand . . ., if the position exists and is available and the worker is not disabled from performing the duties of such position.  Or. Rev. Stat. § 659A.043(1).

[2] A worker who has sustained a compensable injury and is disabled from performing the duties of the worker's former

4 - ORDER

Plaintiff's second claim alleges failure to reinstate or reemploy injured worker.  Defendant contends that plaintiff gave up these rights by participating in a vocational assistance program.[3]  Plaintiff responds that defendant misrepresented or concealed his employability to its workers' compensation carrier and to a vocational assistance evaluator, so that he was improperly found eligible for vocational assistance.  See Or. Rev. Stat. § 656.340(6).  Assuming for argument that defendant actually misrepresented or concealed plaintiff's employability, plaintiff's forfeiture of rights to reinstatement and reemployment is not a consequent and proximate injury.  See Johnsen v. Mel-Ken Motors, Inc., 894 P.2d 540, 545 (Or. App. 1995).  If, as plaintiff argues, he was not disabled from reinstatement or plaintiff had available suitable employment, plaintiff's remedy was to decline to participate in vocational assistance and proceed under Sections 659A.043 or 659A.046.

II.  First Claim - Or. Rev. Stat. § 650A.040

For his first claim, plaintiff alleges that defendant discriminated against him because he invoked the workers'

---

regular employment shall, upon demand, be reemployed . . . at employment which is available and suitable.  Or. Rev. Stat. § 659A.046(1).

[3]Rights to reinstatement and reemployment terminate when "[t]he worker is eligible and participates in vocational assistance under ORS 656.340."  Or. Rev. Stat. §§ 659A.043(3)(b), 659A.046(3)(b).

5 - ORDER

compensation system.[4]  The elements of this claim are invocation of the system, discrimination in the tenure, terms or conditions of employment, and causation.  <u>Williams v. Freightliner, LLC</u>, 100 P.3d 1117, 1121 (Or. App. 2004).  Defendant argues that it offered plaintiff the GSTL position because plaintiff's medical condition did not improve while he worked in the modified Flow Team Lead position, plaintiff did not and could not perform all requirements of the GSTL position, and defendant placed plaintiff on a leave of absence after Dr. Nelson determined plaintiff's condition was medically stationary.  Defendant contends that plaintiff has not produced sufficient evidence of causation to go forward.

Plaintiff has an initial burden to produce evidence permitting an inference that his invocation of the workers' compensation system caused defendant to take adverse action against him.  If he satisfies this burden, and as here, defendant points to a non-discriminatory reason for actions allegedly adverse to plaintiff, plaintiff can go forward on this claim if he produces sufficient evidence to support a finding that

---

[4] It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws.

Or. Rev. Stat. § 650A.040.

defendant's reasons for its actions are a pretext for discriminatory intent. See Snead v. Metropolitan Property and Casualty Ins. Co., 237 F.3d 1080, 1090-94 (9th Cir. 2001).

Citing to Vrooman's deposition testimony, plaintiff argues that disputed questions of fact exist regarding the reason for plaintiff's transfer to the GSTL position, and whether plaintiff performed the essential functions of the GSTL position. For the reasons discussed below, plaintiff fails to produce sufficient evidence to permit an inference of discrimination. In the alternative, plaintiff fails to produce sufficient evidence in light of defendant's stated reasons for offering plaintiff a transfer to the GSTL position, and for placing plaintiff on a leave of absence from that position.

Plaintiff admits he was promoted within a few months after filing each of his first two workers' compensation claims. Plaintiff further concedes that he could not perform the requirements of the Flow Team Lead position after July 12, 2002. Plaintiff does not dispute that he accepted the offer to transfer to the GSTL position. The offer came approximately eight months after plaintiff last filed a claim for workers' compensation benefits, during which time plaintiff's medical condition did not improve while he worked in the modified Flow Team Lead position.

Assuming that Vrooman invited plaintiff to transfer to the GSTL position because he has good people skills, this does not

mean that Alegria and other administrators did not view the transfer to the less physically demanding position as a temporary measure to help plaintiff heal from injuries sustained on July 12, 2002, as plaintiff contends. When asked whether the transfer was intended to be permanent or temporary, Vrooman herself testified that it "could have went either way." Vrooman Depo. at 37:20-21.

Plaintiff's claim that he could perform the essential functions of the GSTL position has little probative value on the question of whether defendant acted with retaliatory intent when it placed him on a leave of absence. Reinstatement to an available position is required on demand when the worker is no longer disabled from the duties of the position, not when the worker is no longer disabled from the essential functions of the position. Or. Rev. Stat. § 659A.043(1). Defendant produced evidence that it placed plaintiff on the leave of absence because he was not performing all the functions of the GSTL position at the time Dr. Nelson rated plaintiff's medical condition as stationary.

Plaintiff appears to be correct that Dr. Nelson and vocational assistance evaluators did not determine that plaintiff is physically incapable of performing the duties of the GSTL position, which plaintiff held for less than one month. Rather, these sources considered whether plaintiff could perform the

requirements of the Flow Team Lead position.  Plaintiff received the job description of the GSTL position in this litigation, in the form of an email from Regional HR Director Constanzo to plaintiff's counsel.  Yet plaintiff has not furnished defendant with a certificate by an attending physician that he can perform the duties of the position, despite defendant's request.  Such a certificate would be prima facie evidence that he is capable of performing the duties of the position.  Or. Rev. Stat. § 659A.043(1).

The physical requirements listed in the job description are not precise, yet they do not cast doubt on defendant's determinations that plaintiff was not performing all the duties of the GSTL position and that he would not be able to do so because of his stationary medical condition.

> While do not have set physical standards that are broken down with defined thresholds our GSTL's must be able to meet certain physical requirements including[]
> limited lifting and performing "team lifts" on items that require more than 1 team member[,] ability to "speed weave" and consistently move from lane to lane to assist cashiers and coach and supervise[,] [and] be able to perform in standing or walking position for up to 90% of your day.

Oliver Aff., Ex. E-mail at 2.

While Vrooman testified that plaintiff had the potential to be a great GSTL, she also testified that plaintiff told her that his medical restrictions prevented him from doing certain things such as assisting customers with hangers or carts, someone was

9 - ORDER

not always available to help plaintiff, and plaintiff's limitations limited his ability to serve as a GSTL. Vrooman Depo. at 30:1-2, 38:10-39:1. Constanzo testified that plaintiff told him in August 2003 that he couldn't answer the question of whether he could perform the requirements of the GSTL position. Costanzo Depo. at 133:25-134:8. A letter request for reinstatement by plaintiff's attorney acknowledges that plaintiff would need accommodation for the lifting requirements of the position. Def's Ex. 20.

Plaintiff has no direct evidence of causation and his circumstantial evidence is very weak. A reasonable juror could not conclude on this record that defendant discriminated against plaintiff because he invoked the workers' compensation system.

III.  Third Claim - ADA & Or. Rev. Stat. § 650A.112

For his third claim, plaintiff alleges he is a qualified disabled person within the meaning of the Americans with Disabilities Act (ADA) and Or. Rev. Stat. § 659A.100, defendant discriminated against him because he is disabled, and defendant interfered with his exercise or enjoyment of rights protected by the ADA.[5]

First, the FAC does not state an ADA "interference" claim

---

[5]Oregon's statute prohibiting discrimination against disabled persons is "construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended." Or. Rev. Stat. § 659A.139.

10 - ORDER

apart from an ADA discrimination claim.[6] The FAC simply alleges that defendant "interfered" with his ADA protected rights by intentionally discriminating against him.

To state a claim for discrimination on account of disability, plaintiff must prove, <u>inter alia</u>, that he is disabled, that is, that he has an impairment that substantially limits a major life activity, has a record of such an impairment, or is perceived by defendant as having such an impairment. 42 U.S.C. § 12102(2); Or. Rev. Stat. § 659A.100(1)(a). The FAC alleges that plaintiff is substantially limited in the activity of working. FAC ¶ 41. Substantially limited in the activity of working means to be significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(I); <u>cf</u>. Or. Admin. R. 839-006-0205(6)(b). The inability to perform a single, particular job does not constitute a substantial limitation. 29 C.F.R. § 1630.2(l)(3)(I). Plaintiff characterizes the Team Lead positions as supervisory.

Although a federal interpretive regulation explains that a back injury preventing heavy work substantially limits the major life activity of working (<u>see</u> 29 C.F.R. Pt. 1630, App.) several

---

[6] 42 U.S.C. § 12203(b) prohibits interference with or retaliation for exercise of rights protected by the ADA.

federal appeals courts, including the Ninth Circuit, have held that the permanent inability to lift twenty-five pounds does not substantially limit the major life activity of working.  See e.g. Thompson v. Holy Family Hosp., 121 F.3d 537, 540 (9th Cir. 1999); Marinelli v. City of Erie, 216 F.3d 354, (4th Cir. 2002) (collecting cases).  This court has held that a fifteen-pound lifting restriction is insufficient.  Galenbeck v. Newman & Newman, Inc., 2004 WL 1088289, *5.  The Seventh Circuit expressed doubt that a ten-pound restriction would substantially limit the major life activity of working, considering the legion of working folks who suffer from back injuries.  Mays v. Principi, 301 F.3d 866, 870-01 (7th Cir. 2002).

In addition to his twenty-pound lifting restriction, plaintiff contends that his medical records evince that he is substantially impaired in his ability to stand, sit, walk, bend, reach and lift, and that he has lost the repetitive use of his spine.  On April 7, 2003, Dr. Nelson opined that plaintiff could bend for 4-7 hours, and kneel or squat, negotiate ladders or stairs, reach overhead and sit and stand each for 1-3 hours. Def's Appx. 9.  Reports by Dr. Nelson dated May 12 and June 23, 2003 restrict plaintiff to light work, twenty pounds lifting and no repetitive bending.  Def's Appx. 13, 16.  Notwithstanding Dr. Nelson's opinion, plaintiff maintains that at all times he has been and remains able to perform the requirements of the GSTL

12 - ORDER

position, which include that he be able to engage in limited lifting and participate in "team lifts," have the ability to "speed weave" and consistently move from lane to lane to assist cashiers and coach and supervise, and be able to perform in a standing or walking position for up to 90% of the day. Oliver Aff., Ex. E-mail at 2.

    Plaintiff maintains he can perform the requirements of the GSTL position. He therefore is not limited beyond his inability to lift more than twenty pounds or bend for more than four to seven hours or kneel or squat for more than one to three hours. He does not present other evidence contemplated by 29 C.F.R. § 1630.2(j). Federal appeals courts have found no disability when presented with similar claims of limitations in working ability, and Oregon statutes should be construed to the extent possible consistent with similar ADA provisions. The court concludes that plaintiff has not produced sufficient evidence to survive summary judgment on the question of whether he is substantially limited in the major life activity of working. For the same reason, a reasonable jury could not find that plaintiff has a record of disability, as the record simply reflects plaintiff's limitations.

    Nor does plaintiff raise a triable issue as to whether defendant nevertheless mistakenly regarded him as disabled. Citing to paragraph twelve of defendant's concise statement of

material facts, plaintiff contends that defendant determined that plaintiff cannot perform any job at Target. The paragraph states that defendant reviewed all of the positions in the store to determine if there was any job that could be offered to plaintiff that would be less physically demanding than the GSTL position, and that defendant determined there was no such position before it decided to place plaintiff on a leave of absence.

Constanzo testified that Alegria, Vrooman and Liebenstein decided to transfer plaintiff to the GSTL position, the GSTL position is the least physically demanding lead position, Alegria determined that plaintiff could not continue to perform the GSTL position once his restrictions became permanent, Costanzo approved the decision based on Dr. Nelson's reports, and Costanzo offered plaintiff a Level 1 position. Constanzo Depo., 49:1-52:25; 131-136; 162-63. Plaintiff testified that he rejected Costanzo's offer to return in a level 1 position.

HR ETL Alegria testified,

> [O]nce we received the permanent restrictions and evaluated the positions we had available in the store . . . we found that there wasn't a position in the store that would accommodate him. Not necessarily that he couldn't work, but a restriction – based on his restrictions, we would not have a position with Target's retail store that would accommodate that.

Alegria Depo., 49:9-17.

IV.  <u>Fourth Claim - Retaliation, ADA, Or. Rev. Stat. § 659A.109</u>

For his fourth claim, plaintiff alleges that defendant

14 - ORDER

discriminated against him in retaliation for his opposition to practices prohibited by the ADA and Oregon's anti-disability discrimination laws, and for participating in proceedings under the ADA and Oregon's anti-disability discrimination laws.[7] By order dated July 22, 2005, the court prohibited plaintiff from proceeding on a retaliation claim premised on his filing of BOLI or EEOC charges. Order (ECF/CM [#21]) at 5.

Plaintiff contends that defendant failed to reinstate him to the GSTL position in retaliation for his opposition to being placed on a leave of absence and his requests for reinstatement to the GSTL position. Denial of a request for reinstatement may be separately actionable from the leave of absence if new "elements of unfairness" that did not exist at the time plaintiff

---

[7]The ADA prohibits discrimination

> against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(1). Oregon law contains similar prohibitions.

> It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS 659A.100 to 659A.145 [protecting disabled persons from discrimination in employment] or has given testimony under the provisions of such sections.

Or. Rev. Stat. § 659A.109.

15 - ORDER

was placed on leave attach to the denial. <u>Josephs v. Pacific Bell</u>, 443 F.3d 1050, 1061 (9th Cir. 2005). Plaintiff suggests that his filing of an EEOC complaint and defendant's misrepresentation or concealment of his employability to its workers' compensation carrier and vocational assistance evaluator are "new elements of unfairness." Plaintiff's act of filing an EEOC complaint does not evince new unfairness on the part of defendant. By his own account, plaintiff would not have had the opportunity to select the benefit of vocational assistance without defendant's alleged misrepresentation or concealment of plaintiff's employability. Any "unfairness" inured to plaintiff's benefit.

## Conclusion

Based on the foregoing, defendant's motion for summary judgment [#27] is granted.

IT IS SO ORDERED.

DATED this __23rd__ day of June, 2006.

                                                  s/ Michael R. Hogan
                                                  United States District Judge